**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **FRANCIS CALLIER; DAMON ODOM;** )<br>**and DEMONICA FAVORS, Individually** )<br>**and on behalf of all others similarly situated** )<br>**who have opted to participate in this action** )<br>            )<br>          Plaintiffs, )<br>            )<br>     v.                 )<br>            )<br>            )<br>**OUTOKUMPU STAINLESS USA, LLC,** )<br>            )<br>     Defendant.        )<br>            ) | CASE NO.:  21-cv-521 |

## AMENDED COMPLAINT (INDIVIDUAL AND COLLECTIVE ACTION)

Plaintiffs **FRANCIS CALLIER, DAMON ODOM and DEMONICA FAVORS** (referred to herein as "Named Plaintiffs") bring this action against Defendant Outokumpu Stainless USA, LLC ("Defendant") individually and on behalf of all others similarly situated. The Named Plaintiffs, as well as "Already Opted-In Plaintiffs"[1] ,and any similarly situated persons who elect to opt-in to this civil action subsequent to the filing of this Amended Complaint are referred to collectively as "Plaintiffs." The Named Plaintiffs seek for themselves and all others who are similarly situated relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et seq. The Named Plaintiffs and Plaintiffs also seek relief under the common law of Alabama.

### JURISDICTION AND VENUE

---

[1] The "Already Opted-In Plaintiffs" are: Granville Allen, Glen T. Brown, Lesley D. Cochran, Matthew Cochran, Dawn Davis, Marcus Dixon, Britney M. Dunagan, Mark Green, Alexander A. Groznik, Amber Helveston, Jonathan Howell, Andrea Kennedy, Mack A. Kennon, Jr., Al. Kirksey, Lance Lane, Joseph Lofton, Michael Madden, Parrish Manuel, Melinda Miller, Stephen Powell, Jr., Marques Rankin, Robert Rollins, Wade Sullivan, Erik Reeb, Jason Stringer.

1.      This Court has jurisdiction over the Plaintiffs' FLSA claims pursuant to 29 U.S.C. §§ 201, et seq. and 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims derive from a common nucleus of operative facts as the claims under the FLSA.

2.      Venue is this Court is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.      The Named Plaintiffs and Already Opted In Plaintiffs are all individuals who are or were employed by Defendant at Defendant's facility in Mobile County, Alabama.

4.      Plaintiff Francis Callier resides in Mobile County, Alabama.  Plaintiff Damon Odom resides in Mobile County, Alabama.  Plaintiff Demonica Favors resides in Clarke County, Alabama.

5.      Defendant Outokumpu Stainless USA, LLC is an entity registered to do business in Alabama.  Defendant is subject to personal jurisdiction in the State of Alabama for purposes of this Lawsuit.

6.      At all material times to this action, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce as defined by § 203(s)(1) of the FLSA.

7.      Defendant is an interstate company whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that moved in and/or were produced in commerce.

8.      Defendant is an employer covered by the record-keeping, minimum wage, and overtime mandates of the FLSA.

9.      The Plaintiffs performed work for Defendant in Mobile County, Alabama as non-exempt, hourly, manufacturing "employees" of Defendant as "employee" is defined by § 203(e)(1)

of the FLSA.  All the factual allegations set out herein pertain to practices of Defendant at its Mobile County, Alabama facility.  All references to "employees" refer to non-exempt, hourly manufacturing employees at Defendant's Mobile County, Alabama facility.

## FACTS

10.     Plaintiff Francis Callier was employed by Defendant from 2011 - June 2021. Plaintiff Damon Odom was employed by Defendant from 2011 - May 2020. Plaintiff Demonica Favors was employed by Defendant from approximately May 2017 – May 2021. All of the Already Opted-In Plaintiffs were employed for part or all of the period from November 1, 2018 - present.

11.     Prior to May 6, 2018 Defendant's timekeeping and/or pay systems were pre-set to automatically round down for pay purposes the time that an employee clocked in before a scheduled shift to the scheduled start time up to a maximum of 30 minutes.

12.     After May 6, 2018 Defendant's timekeeping and/or pay systems were pre-set to automatically round down for pay purposes the time that an employee clocked in before a scheduled shift to the scheduled start time up to a maximum of 7 minutes.  After May 6, 2018 Defendant's timekeeping and/or pay systems would automatically round recorded time when an employee clocked out after the scheduled end time of a shift to the scheduled end time up to a maximum of 7 minutes. Defendant instructed Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs that they were not to clock in more than 7 minutes before the scheduled start of shift.  "Occurrences" are assigned when Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs clock in either 1 minute (or more) after the scheduled start of a shift, or clock out 1 minute (or more) before the scheduled conclusion of a shift.  Defendant instructed its employees not to clock out more than 7 minutes

after the scheduled end of shift, and employees who clock out more than 7 minutes after the scheduled end of shift without supervisor authorization are given an "occurrence." The Defendant's Rounding Policy as of May 6, 2018 stated that even if employees clock in more than 7 minutes early, the time the employees were clocked in would not be rounded up for pay purposes but, instead "the time clock will prompt pay to begin at the actual clock in time. This will constitute unapproved, unpaid time and will be adjusted to reflect such."

13.     Defendant's Team Member Handbook as of August 30, 2018 states that employees who clock in more than 7 minutes before the scheduled start of a shift, or more than 7 minutes after the scheduled end of a shift "are subject to discipline up to and including termination of employment for the unapproved time." Defendant's Team Member Handbook as of August, 2018 was drafted, in part, in reaction to lawsuits filed against it by Colin Hartery, William Heath Hornady, Takendric Stewart, and Christopher Miller alleging that Defendant's time and pay practices violated the Fair Labor Standards Act.

14.     Under Defendant's timekeeping practices until May 6, 2018, for example, if a Plaintiff clocked in at 5:31 p.m. for a scheduled shift at 6:00 p.m., he or she was not paid for time worked until 6:00 p.m. unless Defendant's supervisory personnel manually over-rode the automated rounding by Defendant's timekeeping and/or pay system.

15.     Under Defendant's timekeeping practices after May 6, 2018 if a Plaintiff clocked in at 5:54 p.m. for a scheduled shift at 6:00 p.m. he or she was not paid for time worked until 6:00 p.m. unless Defendant's supervisory personnel manually over-rode the automated rounding by Defendant's timekeeping and/or pay system.

16.     Defendant's stated reason for its change in practices effective May 6, 2018 was to "align our timekeeping with Department of Labor regulations."

17.     Since at least 2009, the regulations promulgated pursuant to the FLSA allowed "rounding" of time to the nearest quarter hour.  The regulations only allow for rounding time "down" to result in 7 minutes of unpaid work.  The regulations also only allowed for "rounding" time down if time would also be rounded "up" under an arrangement that "averages out so that the employees are fully compensated for the time they actually worked." 29 CFR 785.48(b)

18.     Defendant was made aware by its own attorneys in May, 2018 that timekeeping practices which allow employees to clock in before the start of a shift without being penalized (or paid) but  which also provide for discipline if employees clock in even a minute after the start of a shift are not neutral and are potentially unlawful.  After receiving this advice from its attorneys, Defendant adopted exactly the sort of practice its attorneys had explained would be non-neutral and unlawful in practice.

19.     Defendant was also advised by its attorneys in May 2018 that a facially neutral rounding practices can be eviscerated by "by instructing employees, for example, not to clock in more than 7 minutes before the hour." Before finalizing the Team Member Handbook issued in August, 2018 Defendant consulted with its attorneys about its Time Clock Policy.  Defendant was advised by its attorneys that: "Rounding up or down to the nearest quarter of an hour is okay, as long as it is done consistently and the rounding occurs both up and down, and does not round down the majority of the time."  Defendant's attorneys also informed Defendant that "we do  not recommend having a policy where clocking in before the beginning of a shift always round to the start of the shift and results in employees not being paid for that early time.  Employees must be paid for all time worked." After receiving this advice from its attorneys Defendant intentionally violated the FLSA by including in its August, 2018 Handbook warnings to employees that they may be terminated if they clock in more than 7 minutes before a shift, and by adopting rounding

policies and procedures which round down the vast majority of the time, and do not pay employees for all time worked.

20.     At all relevant times, Defendant has assumed for pay purposes that employees such as Named Plaintiffs, and Already Opted-In Plaintiffs, work from the time the employee clocks in until he or she clocks out.

21.     Defendant's time records show the exact time that employees clock in and out.

22.     Arriving employees "make relief," which means they coordinate the status of their work with departing employees before each shift.  Defendant does not do anything to keep track of when arriving employees make relief.  Only clock punches are taken into consideration by Defendant for pay purposes.

23.     Employees cannot clock out and leave before the scheduled end of their shift without receiving points towards termination.

24.     At all times during the three years preceding the filing of this civil action Defendant's rounding arrangements averaged out so that Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs, were not fully compensated for the time actually worked.

25.     Defendant failed to pay Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs, for all of the rounded down overtime worked each workweek.

26.     Each week for which overtime pay obligations are based upon 29 U.S.C. § 207(a) stands alone and entitlement to overtime pay for a particular work week cannot be calculated based on averaging, or aggregating, hours worked in any other week for hourly exempt employees such

as the Plaintiffs and similarly situated employees.   At all relevant times since March, 2018 Defendant was aware that 29 CFR § 778.104 provides:

> The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis. The rule is also applicable to pieceworkers and employees paid on a commission basis. It is therefore necessary to determine the hours worked and the compensation earned by pieceworkers and commission employees on a weekly basis.

27.    At all times since March 2018 Defendant was aware that 29 CFR § 778.105 provides that:

> An employee's workweek is a fixed and regularly recurring period of 168 hours - seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. The proper method of computing overtime pay in a period in which a change in the time of commencement of the workweek is made, is discussed in §§ 778.301 and 778.302.

28.    Through and until the designated pay period ending Sunday January 27, 2019 Defendant identified in the Defendant's computer system that was used and viewable by Defendant's payroll personnel "Pay Period Beginning Dates" that were Mondays, and "Pay Period Ending Dates" that were Sundays on all "Pay Summaries."

29.    Beginning with a pay period designated as beginning January 27, 2019 Defendant's Senior Payroll Specialist, Melissa Pledger, changed the Pay Period Beginning and Ending dates in

Defendant's computer system so that the "Pay Period Beginning Dates" in the computer system that are used by and viewable by Defendant's payroll personnel are Sundays, and the "Pay Period Ending Dates" are Saturdays on all "Pay Summaries."

30.     The business payroll data records Defendant maintained in its ordinary course of business for every two week pay period until January 27, 2019 identified work weeks beginning Mondays and ending Sundays. Since January 27, 2019 Defendant's business payroll data records maintained in the ordinary course of business identified workweeks beginning Sunday and ending Saturday.

31.     The Earnings Statements employees received from Defendant have the same Ending Dates as the Pay Summaries Defendant's payroll personnel use and view in Defendant's computer systems.  Until the pay date of November 8, 2019 those Earning Statements do not contain a Beginning Date. Beginning with the pay date of November 8, 2019 the Earnings Statements identified Period Beginning dates that were Sundays, and Period Ending Dates that were Saturdays.

32.     Until January 27, 2019 Defendant did not pay Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs, for overtime in excess of 40 hours a week based on time worked for the fixed, recurring 168 hour period of Mondays – Sundays.

33.     After January 27, 2019, Defendant did not pay Named Plaintiffs and all similarly situated employees,  including Already Opted-In Plaintiffs ,for overtime in excess of 40 hours a week based on time worked for the fixed, recurring 168 hour period of Sundays – Saturdays.

34.     At all times over the three year period preceding the filing of this civil action the Defendant has not paid its employees for overtime in excess of 40 hours a week based on any fixed, recurring 168 hour weekly period. Defendant calculates the approved time to be paid for so

that the time any employee is paid for any single shift is not allocated between different pay periods no matter what time the employee started working or stopped working.

35.     For pay purposes, Defendant combines all the time associated with an employee's shift regardless of when a shift begins or ends.  All time for any particular shift worked by any particular employee is included in a single pay period for that particular employee.  Defendant does not track time for purposes of calculating pay based on any 168 hour period.  Instead, pay is driven by the shift start time and day and not by the day of the week and time the employee works.

36.     Throughout the entirety of their employment with Defendant, each Named Plaintiff and all similarly situated employees, including Already Opted-In Plaintiffs, were assigned an hourly rate of pay that generally applied to work performed from 6:00 a.m. – 6:00 p.m.  For time worked between 6:00 p.m. and 6:00 a.m. an additional $.50 an hour premium was added to the rate of pay.  Pay rates were subject to temporary "step up rate" increases and other adjustments.

37.     Employees such as Named Plaintiffs can receive payments for adjusted pay rates and when that occurs, the adjusted pay rates are not accurately identified on Earning Statements provided to Employees.

38.     On a regular basis, Defendant, though its Payroll Services provider, recalculates overtime pay due.  This calculation process is referred to as "truing up" or, once completed, "trued up."  Sometimes, this process resulted in additional payments to Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs,  that Defendant calculated were due to be paid for previous pay periods but had not been paid.

39.      The Earning Statements provided to employees do not identify the amount of "trued up" payments. The Earnings Statements employees receive, and the Pay Summary data records Defendant maintains inaccurately document overtime rates of pay.  All Pay Summary data

records and Earning Statements for payments which include "trued up" amounts inaccurately state the hours employees work for which employees are paid, and inaccurately state hourly rates of pay.  The rates of pay for overtime stated on Earning Statements are based on formulas which incorporate the hours worked over an entire multi-week pay period and the base pay (excluding overtime) for hours worked over an entire multi-week pay period.  The rates of pay for overtime that are stated on Earning Statements are not based on formulas which incorporate only the hours worked in individual, single, discrete, recurring 168 hour workweeks.  The rates of pay for overtime stated on Earnings Statements for two week periods are often less than 1.5 times the regular rate of pay that employees earn during individual single week pay periods.  The amounts paid by Defendant for overtime  stated on Earnings Statements for two week periods are often less than 1.5 time the regular rate of pay that employees earn during individual single week pay periods

40.     Defendant is an employer who is required, pursuant to 29 CFR § 516.2 (a) to maintain and preserve for each employee information and data identifying the regular hourly rate of pay for any workweek in which overtime compensation is due, and the basis of pay by indicating monetary amounts paid on a per hour, per day, per week, or other basis and the total wages paid for each pay period.  Neither the Earnings Statements nor the Pay Summary records identify amounts paid pursuant to "true up calculations" or the basis for such amounts.

41.     All payments to Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs, for overtime pay that Defendant previously failed to pay are payments that are un-timely in violation of the FLSA.

42.     At all times relevant to the causes of action asserted Plaintiffs would begin work promptly after clocking in.

43.     Many months Defendant paid each Named Plaintiff and all similarly situated employees, including Already Opted-In Plaintiffs, a bonus.  The amount of the bonus was not included in the regular hourly rate from which the overtime pay rates were calculated.  The bonus payments are not any of the types of payments excluded in 29 U.S.C. § 207(e)   The criteria for the amounts of bonuses are set in advance.  When the criteria are changed, they are changed prospectively not retroactively. Collectively, those criteria calculated based on results over a calendar month dictate whether all employees receive the same percentage bonuses of up to 25%. After a month ends the various criteria are individually accounted for.  Defendant typically has all the information it needs to calculate bonuses by the 15th of the month after the end of the month on which the bonus is earned.  The bonus criteria are quantified based on calendar monthly results for the entire facility.  The bonus earned is stated as a percentage. The percentage is applied to the gross amount of pay received by the employee during the calendar month (not counting other monthly bonuses).  The Plaintiffs were paid every 2 weeks on Fridays.  The percentage is not applied to the gross amount of pay the employee earned during the calendar month.

44.     The calendar month that a bonus is earned is never the same time period as the 4 weeks (or sometimes 6 weeks) of previously received pay that the bonus percentage is applied to. The bonus paid at the end of a month (based on criteria for the prior month) is always applied to earnings from part of the month for which the criteria were considered, and also part of the month before that.

45.     For the period that encompasses all work for which pay was received since December 2, 2018 the Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs, should have been paid at least the minimum cash wage for all time recorded by Defendant after clocking in until clocking out during weeks that they worked less than 40 hours.

46.    For the period that begins November 1, 2018 (work which was compensated by bonus paid on or about December 31, 2018), the Named Plaintiffs and all similarly situated employees,  including Already Opted-In Plaintiffs, should have been paid for hours worked in excess of 40 hours in a single week at time and a half a regular hourly rate which included the monthly bonus payment.

47.    For the period that encompasses all work for which pay was received since December 2, 2018, the Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs, should have been paid time and a half the regular hourly rate for all time recorded by Defendant after clocking in and until clocking out which exceeded 40 hours in a single week.

48.    Since December 2, 2018, all payments at time and a half the regular hourly rate (not including adjustments for bonuses) were due to be paid during the pay period that included the time worked and should not have been delayed until "trued up" calculations were later performed.

49.    Delayed "trued up" payments may not be credited by Defendant against the entitlement of Named Plaintiffs and similarly situated employees, including Already Opted-In Plaintiffs,  to overtime pay during workweeks after the "trued up" workweek payments were earned.

50.    At all times pertinent to the claims asserted herein, Defendant's practices and procedures ensued that Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs, were not, on average, fully compensated for time actually worked. Defendant's "rounding" arrangement averaged out so that Named Plaintiffs and all similarly situated employees, including Already Opted-In Plaintiffs, would be paid for less time than they actually worked as quantified by the times clocked in and out.

51.     Defendant's failure to pay each Named Plaintiff and all other similarly situated employees, including Already Opted-In Plaintiffs,  the compensation, including overtime pay, to which they were entitled under the FLSA as alleged herein was willful, intentional, unreasonable, and not in good faith.

## **COUNT I**
(Individual Claims for Violations of the FLSA)

52.     All preceding allegations are incorporated as though fully set forth herein.

53.     Named Plaintiffs are employees fully entitled to the FLSA's protections. In the alternative to proceeding collectively, until a collective is certified or if a collective is not certified, the Already Opted-In Plaintiffs assert claims individually as stated in this Count I.

54.     Defendant is an employer covered by the FLSA.

55.     The FLSA entitles employees to minimum hourly compensation of $7.25 for hours worked under 40 in a week.  29 U.S.C. § 206(b).

56.     The FLSA entitles employees to pay at 1.5 times the employee's regular hourly rate for hours worked in excess of 40 hours a week.  29 U.S.C. § 207(a).

57.     By failing to pay Named Plaintiffs and Already Opted-In Plaintiffs,  for all time they were clocked in and working and/or available to work Defendant violated the FLSA's minimum wage mandates and overtime pay mandates.

58.     By failing to pay overtime at 1.5 times an hourly rate that included monthly bonus payments and all trued-up and adjusted pay rates, Defendant violated the FLSA's overtime pay mandate.

59.     By failing to pay overtime at 1.5 times the regular hourly rate for all hours worked in excess of 40 hours in a work week, Defendant violated the FLSA's overtime pay mandate.

60.     By failing to pay overtime pay on the regular payment date and, instead, paying some overtime pay on later dates as part of "trued up" amounts, Defendant violated 29 U.S.C. § 206(b) and 29 CFR § 778.106.  Named Plaintiffs and Already Opted-In Plaintiffs  are entitled to damages in an equal amount as all untimely payments.

61.     In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

62.     Named Plaintiffs and Already Opted-In Plaintiffs are entitled to recover for unpaid time, unpaid overtime compensation, liquidated damages, reasonable attorney's fees, and costs.

## COUNT II
(Common Law Claims)

63.     All preceding allegations are incorporated as though fully set forth herein.[2]

64.     Regarding work performed but not paid for  beginning December 2, 2015 for the Named Plaintiffs and beginning six years before the filing of Consent forms by any other Plaintiffs, including Already Opted-In Plaintiffs, the Plaintiffs claim that they are  entitled to recover from Defendant for the value of the time worked, but not paid for, under common law theories of quantum merit and/or unjust enrichment. The value of the benefit conveyed to Defendant for work performed, but not paid for, is at least the value Defendant placed on similar work which Defendant did pay for during the same weeks. This claim is asserted in the alternative to claims under the FLSA for time worked in weeks in which less than 40 hours were worked for the period within three years preceding the filing of the Complaint by Named Plaintiffs, and the filing of Consent forms by Already Opted-In Plaintiffs, and other Plaintiffs.

---

[2] With regard to this Count II, the Plaintiffs anticipate that each future opt-in Plaintiff shall be designated by name in a subsequent amended complaint consistent with any deadlines that may be set if this civil action is conditionally certified, or other applicable deadlines.

65.     Plaintiffs performed work which enabled Defendant to produce goods which Defendant sold to generate revenue, but Plaintiffs were not paid for that work.  Defendant knew that Plaintiffs performed work between clocking in and clocking out for which they were not compensated by Defendant.  Defendant elected to accept the benefits of Plaintiffs' uncompensated work.

66.     Defendant was unjustly enriched at all the Plaintiffs' expense.

67.     The value of the benefit conveyed to Defendant for work performed, but not paid for, is at least the value Defendant placed on similar work which Defendant did pay for during the same weeks and Plaintiffs are entitled to recover damages as calculated by the amount of time clocked in, but not paid for, at the hourly rate they were paid for other work performed in the same week.

<u>**COUNT III**</u>
(Collective Action Claim for Violations of the FLSA, Monetary and Injunctive Relief)

68.     The Plaintiffs repeat and reallege the preceding paragraphs 1 – 62 of this Amended Complaint as if fully set forth herein.

69.     Named Plaintiffs bring this action individually and also on behalf of all other similarly situated employees (including Already Opted-In Plaintiffs), former and present, who worked for Defendant at its facility in Calvert, Alabama and who were paid on an hourly basis since the date three years immediately preceding the filing of this civil action and who were/are affected by Defendant's acts, omissions, timekeeping and wage payment practices described in this Complaint ("The Collective").

70.     Named Plaintiffs bring this collective action to recover compensation owned by Defendant to Named Plaintiffs and all members of the Collective for all time worked as reflected in the time records of Defendant.

71.     Named Plaintiffs bring these claims for relief as a collective action.  The Collective should be defined as:

**"All hourly-paid employees of Outokumpu Stainless USA, LLC in manufacturing positions in Calvert, Alabama since November 1, 2018**

72.     This action is properly brought as a collective action because the Named Plaintiffs and all Collective members are similarly situated in that they were all subject to the common policies and practices  described herein.

73.     Defendants failed to pay Named Plaintiffs and all other similarly situated employees in the Collective proper overtime compensation for hours worked in excess of 40 in a work week and failed to pay Named Plaintiffs and all other similarly situated employees in the Collective proper compensation for all hours worked.

74.     Defendant failed to pay Named Plaintiffs and all other similarly situated employees in the Collective overtime at a rate of 1.5 times a regular hourly rate inclusive of bonus payments.

75.     The "trued up" payments made to Named Plaintiffs and all other similarly situated employees in the Collective were overtime payments that were not timely paid in violation of 29 U.S.C. § 206(b) and 29 CFR § 778-106.

76.     All opt-in Plaintiffs who are part of the Collective are entitled to recover for unpaid time, unpaid or underpaid overtime compensation, liquidated damages, damages in an equal amount of the late "trued up" overtime payments, reasonable attorney's fees and costs.

77.     Named Plaintiffs and all other similarly situated employees in the Collective are entitled to injunctive relief, specifically:

    a.   That Defendant calculate entitlement to pay on the basis of time worked during a fixed, recurring, 168 hour workweek, and be enjoined from calculating entitlement to pay on any other basis.

    b.   That Defendant cease the automated time-rounding procedures which result in employees, on average, being paid for less time than they are working and/or suffered to work.

    c.   That Defendant cease excluding from the regular pay rates upon which overtime pay is calculated the percentage incentive bonuses which are earned during time periods that do not coincide with the prior pay periods to which the percentage bonus is applied.

    d.   That  Defendant cease its practice of paying employees for some overtime pay on a belated basis, after  the regular payments for the same workweeks have been made, without doubling the amount of all such belated payments.

    e.   That Defendant maintain accurate time and pay records as required by the FLSA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully requests that this Court grant the following relief:

A.     Designation of this action as a collective action on behalf of the Plaintiffs and the Collective they seek to represent and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), to all similarly situated members of the opt-in Collective apprising them of the pendency of this action, permitting them to assert timely claims in this action by filing individual consent to sue

forms pursuant to 29 U.S.C. § 216(b) and equitable tolling of the statute of limitations from the date of this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. § 216(b preserving their claims for the alleged acts and omissions.

B.    A declaratory judgment that Defendant's wage practices alleged herein violate the FLSA, 29 U.S.C. § 201 *eq seq*, and attendant regulations at 29 C.F.R. § 516 *et seq*.

C.    An order directing Defendant, at its own expense, to investigate and account for the number of hours actually worked by Named Plaintiffs, already Opted-In Plaintiffs, and / or all Collective members for each workweek, and the hourly rates for each hour worked, the amount(s) paid for overtime for each workweek, and the rates of overtime pay.

D.    Judgment for damages under the FLSA for unpaid wages for time worked by Named Plaintiffs, already Opted-In Plaintiffs, and / or all Collective members during weeks in which they worked less than 40 hours, or alternatively for damages under state common law.

E.    Judgment for damages for all unpaid and/or underpaid and/or late paid overtime compensation under the FLSA 29 U.S.C. § 201 *eq seq.* and attendant regulations at 29 C.F.R. § 516 *et seq*.

F.    Judgment for liquidated damages pursuant to FLSA 29 U.S.C. § 201 *eq seq.* and attendant regulations at 29 C.F.R. § 516 *et seq.*  in an amount equal to all compensation owed to Named Plaintiffs and all Collective members under the FLSA for unpaid, underpaid, or late paid compensation during the applicable statutory period.

G.    Judgment for any and all civil penalties to which Named Plaintiffs already Opted-In Plaintiffs, and / or and all Collective members may be entitled.

H.      An order directing Defendant to pay Named Plaintiffs already Opted-In Plaintiffs, and / or and all Collective members reasonable attorneys' fees and all costs connected with this action.

I.      Judgment for any and all compensatory damages to which Plaintiffs may be entitled under applicable law along with any recoverable pre-judgment interest.

J.      Certification of the collective.

K.      Such other and further relief as to this Court may deem necessary, just and proper.

L.      Permanent Injunctive Relief as described in paragraph 77 and its subsections.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury on all questions of fact raised in the Amended Complaint.


Respectfully Submitted.


**HOLSTON, VAUGHAN & ROSENTHAL, LLC.**

By: /s/ Ian D. Rosenthal
Ian D. Rosenthal – ROSEI6905
Attorney for Plaintiffs
Post Office Box 195
Mobile, AL 36601
(251) 432-8883 (office)
(251) 432-8884 (fax)
Email:  idr@holstonvaughan.com


**SIMS LAW FIRM, LLC.**

Patrick H. Sims – SIMSP8145
Attorney for Plaintiffs
Post Office Box 7112
Mobile, AL 36670
(251) 490-9424
Email: patrick@simslawfirm.net

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that I have on this the 20th day of April, 2022, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

        **Devin C. Dolive, Esq.**
        **Ronald W. Flowers, Jr. Esq.**
        Burr & Forman, LLP
        420 North 20th Street – Suite 3400
        Birmingham, Alabama 32503
        E-Mail:  ddolive@burr.com
            rflowers@burr.com
        And:

        **H. William Wasden, Esq.**
        Burr & Forman, LLP
        11 North Water Street – Suite 22200
        Mobile, Alabama 36602
        E-Mail:  bwasden@burr.com

        *Counsel for Defendant, Outokumpu Stainless USA, LLC*

           /s/ Ian Rosenthal
           OF COUNSEL