IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FRANCIS CALLIER, *et al.*, | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:21-00521-JB-N |
| | ) |
| OUTOKUMPO STAINLESS | ) |
| USA, LLC, | ) |
|     Defendant. | ) |

## ORDER

This action is before the Court[1] on Plaintiffs' motion to compel discovery (Doc. 139), Defendant Outokumpo Stainless USA, LLC's ("OTK") opposition response (Doc. 145; *see* Doc. 149), and Plaintiffs' reply in support. (Doc. 148). Plaintiffs' motion has come before the Court for two hearings where oral argument was presented, and two joint status reports addressing it were filed January 22, 2024 and May 29, 2024, respectively. (Docs. 178, 180, 187, 188, 189).[2] With the benefit of oral argument, upon consideration and for the reasons stated herein, Plaintiffs' motion is **GRANTED in part** and **DENIED in part** as set out.

### I.    *Background*

Plaintiffs' motion identifies disputes over OTK's responses to Interrogatories

---

[1] The assigned District Judge has referred this motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)–(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (9/8/2023 elec. ref.).

[2] The most recent hearing was held June 7, 2024 (hereinafter the "June 7 hearing") and took place during two sessions on that date. (*See* Docs. 188, 189). The most recent joint status report filed May 29, 2024 (hereinafter the "May 29 JSR") was done so at the undersigned's direction in anticipation of the June 7 hearing. (Doc. 187; *see* Doc. 185). The joint status report filed January 22, 2024 (hereinafter the "January 22 JSR") was also filed at the undersigned's direction and is embedded within the parties "Joint Submission about Proposed Phase III Scheduling Order." (Doc. 180; *see* Doc. 179).

No. 1-8 and RFPs No. 2, 3, 5, 7, 11, 13-17 from their first set of discovery, along with disputes involving OTK's supplemental responses to Interrogatories No. 1-2 and initial responses to RFPs No. 1-4 from their second set of discovery. (Doc. 139). The parties are familiar with the specifics of their filings and arguments, so the undersigned will not reiterate them here at length.

Subsequent to the filing of Plaintiffs' motion to compel, Chief District Judge Jeffrey U. Beaverstock granted in part and denied in part Plaintiffs' motion to amend (Doc. 144), an amended complaint was filed (Doc. 146), and OTK's partial motion to dismiss the amended complaint was denied (Doc. 171). Per OTK, "[t]he result of those rulings has been to remove at least part of the basis for OTK's objection[s]" as as set out in briefing on Plaintiffs' motion. (Doc. 187, PageID.3387). In light of those rulings, OTK has also made supplemental productions which have effectively resolved some of the disputed matters put at issue by Plaintiffs' motion. (*See* Doc. 187).[3]

## II.   *Legal Standards*

The scope of discovery for civil actions in federal court is broad, allowing each party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). This broad purpose aims to empower parties "to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). However, discovery is not without its limits, and the court must weight "the

---

[3] It should be noted OTK has moved for partial summary judgment, which is currently pending before Chief Judge Beaverstock. (Doc. 166). This order takes no position on any matter raised in that motion, and to the extent items relevant to that motion are discussed here, it is for contextual purposes only.

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery is resolving the issues, and whether the burden on expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Ultimately, the district court has "broad discretion to compel or deny discovery." *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020).

Parties "may move for an order compelling disclosure or discovery" under Rule 37(a). Relevant here, such a motion is permitted if a party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents… as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(iii)-(iv). Under Rule 37(a)(4), "an evasive or incomplete, disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Moreover, parties are under a continuing obligation to supplement responses to both interrogatories and requests for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing" or "as ordered by the court." Fed. R. Civ. P. 26(e).

## III.   *Items Resolved by the Parties*

Three items put at issue by Plaintiffs' motion were resolved by the parties either before or during the June 7 hearing without any substantive intervention by the Court. In light of that resolution, the undersigned finds any dispute regarding these items is moot, such that Plaintiffs' motion is **DENIED as moot** as to:

- <u>RFP No. 3 (First Set)</u>, due to the parties' agreement to work toward a stipulation that would negate the need for the production (*see* Doc. 189);

- <u>RFP No. 5 (First Set)</u>, in light of OTK's supplemental production (Doc. 180, PageID.3355); and,

- <u>RFP No. 17 (First Set)</u>, as Plaintiffs' have withdrawn their motion with respect to this item (Doc. 148, PageID.2270; *see* Doc. 189).

## IV.   *Partially Resolved Items*

The discovery items discussed in this section remain outstanding but are partially resolved for one reason or another following the June 7 hearing. The disputes regarding these items are effectively moot for the reasons explained below, but additional action is needed in order to facilitate a complete resolution.

First, Plaintiffs' motion is **DENIED** as to:

- <u>RFP No. 14 (First Set)</u>, because OTK's gave a partially responsive (albeit, hedged) answer, has effectively withdrawn its objections and affirmed that all responsive documents in OTK's possession have been produced (Doc. 139-1, PageID.1355; Doc. 145, PageID.1439; *see* Doc. 188);

- <u>RFP No. 15 (First Set)</u>, for the same reasons stated above (Doc. 139-1, PageID.1355-56; Doc. 145, PageID.1439; *see* Doc. 188);

- <u>RFP No. 16 (First Set)</u>, in light of OTK's supplemental production as alluded to in the parties' JSRs (*see* Doc. 180, PageID.3355; Doc. 187, PageID.3400), and provision of "the most recent Handbook version" to Plaintiffs' counsel in an unrelated matter, (Doc. 187, PageID.3400), along with OTK's effective withdrawal of its objections and affirmation that it has otherwise produced everything in its possession responsive to this request (Doc. 139-1, PageID.1355-56; Doc. 145, PageID.1439; *see* Doc. 188); and,

- <u>RFP No. 2 (First Set)</u>, as a result of a supplemental production made by OTK, its effective withdrawal of objections to this request and affirmation that it has produced all responsive documents and records in its possession (Doc. 187, PageID.3887, 3889; *see* Doc. 188).

As agreed, OTK will formally amend and/or supplement its responses to each

4

of these four items to affirm that it has produced all responsive documents in its possession and that it has nothing further to produce. (*See* Docs. 188, 189). OTK is **ORDERED** to serve those formally amended and/or supplemented responses by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

Additional items have been partially resolved prior to entry of this order which require slightly more discussion:

Interrogatory No. 3 (First Set) is partially resolved as a result OTK effectively withdrawing its initial objections and agreeing to amend and/or supplement its answer "to reflect a 'no' response[.]" (Doc. 145, PageID.1426). While this concession and agreement to amend renders the dispute involving this item effectively moot, Plaintiffs' motion is **GRANTED** with respect Interrogatory No. 3 (First Set) based upon OTK's failure to initially provide a responsive answer. *See* Fed. R. Civ. P. 37(a)(4). OTK is **ORDERED** to formally amend and/or supplement its response to this interrogatory by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

Interrogatory No. 8 (First Set) is partially resolved as a result of OTK effectively withdrawing its objections and affirming it has nothing further responsive to add to its answer beyond its pointing to 26 pages of Melissa Pledger's testimony[4]

---

[4] The parties are aware of the *Introduction to Civil Discovery Practice in the Southern District of Alabama*, Civil Discovery Subcommittee (2019) report (hereinafter, the "Civil Discovery Practice Report"), which offers guidance on this Court's anticipated, and expected, discovery practices and procedures. (*See* Doc. 57, PageID.496) (noting said report)). Relevant here, that report explains:

> Since a party is entitled to discovery both by deposition and by interrogatories, it is ordinarily insufficient to answer an interrogatory by general reference to a deposition or document, such as "see deposition of James Smith"…
>
> In rare circumstances, a corporation or partnership may appropriately answer a complex interrogatory by saying something such as "Acme Roofing Company adopts as

from *Gibson v. Outokumpo Stainless Steel USA, LLC*, 1:21-00103-JB-N (S.D. Ala.).[5] (Doc. 139-1, PageID.1345; Doc. 139-7; *see* Docs. 188, 189). OTK's opposition response explains the written or oral communications relevant to this interrogatory are not kept as records such that producing the associated dates and times with "would not be plausible." (Doc. 145, PageID.1432). While the undersigned finds that contention made in good faith, OTK's current response is incomplete because it merely "refers" Plaintiffs to Pledger's deposition without "adopt[ing]" its contents as its responsive answer. *See Civil Practice Discovery Report*. Accordingly, while OTK may have nothing further to add, Plaintiffs' motion is **GRANTED** as to Interrogatory No. 8 (First Set). OTK is **ORDERED** to formally amend and/or supplement its answer by no later than **July 12, 2024** to either state it is incapable of answering this interrogatory as phrased or by formally adopting Pledger's deposition testimony as its responsive answer. *See* S.D. Ala. CivLR 5(b).

RFP No. 13 (First Set) is partially resolved based on the answer OTK provided, its effective withdrawal of objections, and assertion that it would amend and/or supplement its response to affirm it is not aware of any responsive documents. (Doc.

---

its answer to this interrogatory the deposition testimony of James Smith, its Secretary, shown on pages 127- 145 of the deposition transcript." In the equally rare circumstance where an individual party has already fully answered an interrogatory in the course of a prior deposition, the deposition answer may be adopted as the interrogatory answer. However, this practice must be used carefully and in good faith, since for purposes of discovery sanctions, "an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer or respond." Federal Rule 37(a)(4).

*See Introduction to Civil Discovery Practice in the Southern District of Alabama* at pp. 12-13.

[5] Hereinafter referred to simply as "*Gibson*."

139-1, PageID.1355; Doc. 145, PageID.1437-39; *see* Doc. 189). OTK's initial response stated it did "not know of any responsive documents that are non-privileged and have not been filed in the *Hornady* [*v. Outokumpo Stainless Steel USA, LLC*, 1:18-00317-JB-N (S.D. Ala.)]⁶ case." (Doc. 139-1, PageID.1355). This partially responsive answer hedged on a possible privilege contention, but OTK affirmed during the June 7 hearing that it was not aware of any responsive documents – privileged or otherwise – beyond those filed in *Hornady*. (*See* Doc. 189). Accordingly, Plaintiffs' motion is **DENIED** as to RFP No. 13 (First Set), and OTK is **ORDERED** to formally amend and/or supplement its answer to affirm that it is not aware of any documents responsive to this request (beyond those filed in *Hornady*)⁷ by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

## V.    *Unresolved Items*

The discovery items discussed in this section remain contested following the June 7 hearing. They are addressed below in no particular order, though related items are grouped together.

### A.  **Interrogatory No. 1 (First Set)**

This item is related to RFP No. 2 (First Set). (*See* Doc. 139, PageID. 1311) ("Interrogatory 1 asks OTK to identify exactly which parts of which documents that OTK produced show shifts where OTK claims it both authorized and paid Plaintiffs

---

⁶ Hereinafter referred to simply as "*Hornady*."

⁷ To the extent OTK intends to incorporate documents filed in *Hornady* as part of its formal response to this request, it need produce or identify (if already produced) those documents for purposes of this action to the extent it has not already done so.

for amounts of time other than 12.0 hours a shift. RFP asked for the records themselves.")).

INTERROGATORY NO. 1: Identify exactly which parts of which documents (i.e. bates stamp numbers, excel column headers, etc.) OTK produced that show the shifts OTK claims that it authorized and <u>also</u> paid Plaintiff for any amount of time other than, 12.0 hours for any shift worked.

For each Plaintiff, this interrogatory is limited to the time period:
<u>Beginning</u> 6 years before the filing of (a) the filing of a Complaint identifying the Plaintiff, of (b) the filing of a Consent to Become a Party Plaintiff, and
<u>Ending</u> the most recent date of employment with OTK as an hourly employee.

RESPONSE: In addition to its General Objections, Defendant objects to this Interrogatory on the grounds that it is not properly limited in time and scope, not proportional to the needs of the case, overly broad, and unduly burdensome. Defendant further objects to the extent this Interrogatory seeks information about individuals other than the named Plaintiffs in this action prior to a discovery plan being adopted regarding class discovery. Without waiving any objections, OTK states that, under Rule 33(d), the answers to this Interrogatory going back three years from when this lawsuit was filed can be obtained from the business records that OTK has already produced. OTK's business records reflecting, among other things, when Named Plaintiffs clocked in and out have been produced at Bates-stamp pages OTK/Callier 139-140; 202-203; 297-298. Further, the documents Bates-stamped OTK/Callier 139, 202, and 297 show the "Pay Code" for the "Hours." OTK will supplement this interrogatory response with a list, from the above-referenced records of shifts that OTK paid the named Plaintiffs for amounts of time "other than, 12.0 hours."

By way of example only, OTK states that the above referenced records reflect that OTK paid Mr. Francis Callier for amounts of time "other than, 12 hours" for shifts beginning on, among other, the following…

[specific instances omitted]

Additionally, the above referenced records reflect that OTK paid Mr. Damon Odom for amounts of time "other than, 12 hours" for shifts beginning on, among other, the following…

[specific instances omitted]

Additionally, the above referenced records reflect that OTK paid Mr. Demonica Favors for amounts of time "other than, 12 hours" for shifts beginning on, among other, the following…

[specific instances omitted]

(Doc. 139-1, PageID.1335-39).

OTK originally objected to this interrogatory on a myriad of grounds before referring Plaintiffs (by Bates-stamp) to various documents already produced and responding "by way of example" and identifying instances where it both authorized and paid for amounts of time other than 12 hours for Plaintiffs Callier, Odom and Favors. (*See* Doc. 139-1, PageID.1336-39). OTK's example did not appear nor claim to be a complete list of each such instance for these three plaintiffs, but it was a start, and it was accompanied OTK's attempt to explain how it compiled that list so Plaintiffs could apply the methodology. (*Id.*). The majority of OTK's objections (*see* Docs. 139-1, PageID.1336; Doc. 145, PageID.1424-25) have been withdrawn, or effectively withdrawn, as a result of an amended complaint being filed and OTK's partial motion to dismiss being denied. (*See* Docs. 187, PageID.3387-90).

Plaintiffs argue OTK should be compelled to identify "where on the documents it produced it contends the accurate shift-specific time that was both authorized and paid can be located," which they explain will ultimately be relevant to their damages calculations. (Doc. 139, PageID.1311-12; Doc. 148, PageID.2260-61; *see* Docs. 187, 188). At this stage, OTK's primary objection is that requiring a full response to this interrogatory will impose an undue burden in terms of time and expense because

there are hundreds (if not thousands) of such instances that would need to be identified. (Doc. 139-1, PageID.1336; *see* Doc. 188). Moreover, it contends it should not be subjected to that burden because Plaintiffs have all the information needed, and an explanation of OTK's methodology, such that OTK need not identify or list out each instance for Plaintiffs because they can do so themselves. (*Id*.). Plaintiffs do not dispute they might be able to identify the relevant instances on their own but explain undertaking that endeavor is no simple task – it requires a complex method of cross-references various worksheets, and its complexity is compounded by various "inconsistencies" that exist within the pay records. (*See* Doc. 188).

Compiling the information responsive to this interrogatory will be a heavy lift for either party; however, OTK has better familiarity with its own records and has already demonstrated an ability to implement a responsive methodology for the sub-group of Callier, Odom, and Favors.[8] Plaintiffs, on the other hand, would largely be working from scratch – using only OTK's explanation of its own documents as a guide. On balance, the undersigned finds this burden should be OTK's to shoulder. Accordingly, its objections are **OVERRULED**, and Plaintiffs' motion is **GRANTED** as to Interrogatory No. 1 (First Set). OTK is **ORDERED** to amend and/or supplement its answer accordingly by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

### B. **Interrogatories No. 4 & No. 5 (First Set)**

These interrogatories are related.

---

[8] The undersigned notes the plaintiff-by-plaintiff approach employed by OTK in formatting its "example" for the Plaintiff sub-group arguably provides more information that what this interrogatory actually seeks, which is a list identifying "which parts of which documents (i.e., bates stamp numbers, excel column headers, etc.)… show the shifts…" (Doc. 139-1, PageID.1335; *see* Doc. 139, PageID.1312).

INTERROGATORY NO. 4: Identify (name, contact information, job title(s), period(s) of employment) each person from November 1, 2018 - present with any responsibilities for ensuring OTK's compliance with the FLSA and the related federal regulation, including but not limited to anti-retaliation provisions.

RESPONSE: In addition to its General Objections, Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not limited to the claims of the named Plaintiffs before the parties have established a discovery plan. Without waiving any previously stated objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, OTK refers Plaintiffs to pages 124 through 126 and 140 to 142 of the deposition of David Scheid in the *Gibson* case and pages 116 through 117 of the deposition of Marva Rodrigues in the *Gibson* case, and responds that David Scheid, Carlos Villacreces, Melissa Pledger and all of its supervisory employees have responsive responsibilities.

…

INTERROGATORY NO. 5: Describe what any OTK employee with responsibilities for ensuring OTK's compliance with the FLSA actually did at any time November 1, 2018 - present to determine what the FLSA and its related federal regulations, including but not limited to ant[i]-retaliation provisions, requires, permits, and / or does not permit.

RESPONSE: In addition to its General Objections, Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Defendant further objects that the requests appear to seek information protected by the attorney-client privilege and the attorney work product doctrine. Without waiving these objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, OTK will provide documents containing non-privileged responsive information, to the extent it exists.

(Doc. 139-1, PageID.1342).

Plaintiffs describe Interrogatory No. 4 as seeking for OTK to identify employees with "responsibilities for ensuring OTK's compliance," while Interrogatory No. 5 then seeks for OTK to describe what those persons "actually did," during the subject time frame. (Doc. 139, PageID.1315-16; *see* Doc. 139-1, PageID.1342). Thus,

OTK's response to Interrogatory No. 4 will dictate the applicable scope of its response to Interrogatory No. 5.

Because of their correlation, the undersigned begins with Interrogatory No. 4. OTK raised several objections and then gave a partially responsive answer by identifying David Scheid, Carlos Villacreces, and Pledger, but then goes on to state "all of its supervisory employees have responsive responsibilities." (Doc. 139-1, PageID.1342). OTK also pointed to eight pages of deposition testimony in *Gibson* from Scheid and Marva Rodrigues, both of which include partially responsive information.

OTK's objections to Interrogatory No. 4 are driven by an exaggerated reading of it, conflating employees who *have* compliance responsibilities with employees responsible for *ensuring* that compliance. (Doc. 139-1, PageID.1342; Doc. 145, PageID.1426-28). Accordingly, its characterization of this item as implicating nearly every employee at the company is misplaced. For example, an employee who clocks-in and out, ensures payments are made or supervises others in an effort to comply with OTK's policies surely have some level of compliance responsibility, but they are not responsible for ensuring that compliance company-wide. In any event, the undersigned finds OTK has made a semi-good faith effort by identifying Scheid, Villacreces and Pledger, who it later describes as "upper management level employees who are primarily responsible for OTK's FLSA compliance." (*See* Doc. 145, PageID.1428).

That said, however, OTK's response to Interrogatory No. 4 is incomplete for two reasons. First, it is certainly plausible that other upper management level

employees exist who have responsibilities for ensuring OTK's compliance with federal labor regulations. Second, OTK again merely "refers" to the deposition testimony from Scheid and Rodrigues without formally adopting it as part of its responsive answer. Accordingly, Plaintiffs' motion is **GRANTED** as it relates to Interrogatory No. 4 (First Set). OTK is **ORDERED** to formally amend and/or supplement its answer by either (1) identifying additional employees who fit within the stated category of employees or affirmatively state it has identified all such employees and/or (2) if it intends for Scheid and Rodrigues's deposition testimony to serve as part of its responsive answer, to formally adopt the same. *See Civil Practice Discovery Report*. OTK shall do so by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

OTK's objections to Interrogatory No. 5 are largely tied to its objections to Interrogatory No. 4 and based on the conflated reading discussed above. As an initial point on Interrogatory No. 5, despite identifying Scheid, Villacreces and Pledger, OTK gives no response for what those employees "actually did." (*See* Doc. 139-1, PageID.1342). While OTK opines in its opposition response that the information sought by this interrogatory might be better obtained via depositions, even if true, OTK cannot avoid a response simply by suggesting an alternative method of discovery might be more convenient.

Because OTK identified Scheid, Villacreces and Pledger in response to Interrogatory No. 4, it must provide a response describing what they "actually did" during the subject time frame for purposes Interrogatory No. 5. Thus, Plaintiffs' motion is **GRANTED** as it relates to Interrogatory No. 5 (First Set), and OTK is

**ORDERED** to formally amend and/or supplement its response accordingly. In the event OTK's amended and/or supplemented response to Interrogatory No. 4 identifies employees beyond Scheid, Villacreces and Pledger, Interrogatory No. 5 must be further supplemented to account for those employees "actually did" as well. OTK shall do so by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

### C. Interrogatory No. 6 (First Set)

INTERROGATORY NO. 6: For the period November 1, 2018 - present describe exactly the formula(s) by which overtime rates for pay to OTK's hourly employees was calculated using "RROP" and (if applicable) how those formulas differed in two week pay periods during which hourly employees worked step-up rates for less than all shifts worked.

For each Plaintiff, this interrogatory is limited to the time period:
Beginning 3 years before the earliest of (a) the filing of a Complaint identifying the Plaintiff, or (b) the filing of a Consent to Become a Party Plaintiff, and
Ending the most recent date of employment with OTK as an hourly employee.

RESPONSE: In addition to its General Objections, Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not properly limited in time and scope. Defendant further objects to the extent this Interrogatory seeks information about individuals other than the named Plaintiffs in this action prior to a discovery plan being adopted regarding class discovery, and to the extent this information is not within its custody or control. Subject to and without waiving its objections to this Interrogatory, Defendant, pursuant to Federal Rule of Civil Procedure 33(d), the hourly rates used in determining the amount of overtime pay (including "Shift OT Hrs") the named Plaintiffs received in workweeks in which they worked over 40 hours can be calculated using the formulas contained in the Excel spreadsheet that OTK has produced as Bates-stamped OTK/Callier 1157. Further, OTK refers Plaintiffs to pages 129 to 133 of the Rule 30(b)(6) deposition of ADP taken in the *Gibson* case. The "actual formulas" are embedded in ADP's proprietary software. OTK states that is has been able to re-create (and therefore duplicate) ADP's formulas as set forth in ADP's deposition testimony, but OTK does not have access to the "actual formulas" embedded in the ADP software.

14

(Doc. 139-1, PageID.1343)

This interrogatory requires some context. Both parties describe the information sought by Interrogatory No. 6 as highly technical and proprietary (as to non-party ADP, Inc.). (*See* Docs. 139, 145, 148). It should be noted there are two different sets of ADP-proprietary formulas at issue within this request – those used pre-September/October 2022 (the "old" formulas) and those used post-September/October 2022 (the "new formulas"). (*See* Docs. 139, 145). Plaintiffs seek a description of both "old" and "new" along with a description of both showing "step-up" rates. (*Id*.). Thus, the undersigned construes Interrogatory No. 6 as really seeking four items: (1) a description of the "old" pre-September/October 2022 formulas, (2) a description of the "old" pre-September/October 2022 incorporating step-up rates, (3) a description of the "new" post-September/October 2022 formulas, and (4) a description of the "new" post-September/October 2022 incorporating step-up rates.

The old formulas allegedly resulted in inconsistent application of overtime pay rates and were, at least in part, an impetus for this and other related litigation against OTK. As ADP proprietary information, the formulas themselves were not accessible by OTK. During the *Gibson* litigation, OTK employee Villacreces was able to reverse engineer (as an Excel spreadsheet) the process by which the pre-September/October 2022 were calculated and "re-create" the old formulas. (Docs. 139, 145, 148). That spreadsheet has previously been provided to Plaintiffs, but does not and cannot incorporate "step-up" rates. (*Id*.).

In light of this and other litigation, the old formulas used to calculate overtime

pay rates were changed by ADP in September or October 2022 at OTK's request. While the "new" formulas, according to Plaintiffs, "still lead[] to underpayments," they essentially argue that because OTK made a change, it must at least know what the old formulas were because it could only change them if it knew a change was needed. (Doc. 139). In support of that argument, Plaintiffs point to communications between Pledger and ADP from September 2022, wherein Pledger appears to ask ADP to make a change, ADP describes that change in technical terms, and then confirms with Pledger whether the change it made is what she requested. (Doc. 139; *see* Doc. 139-4). These communications do not indicate what the formulas are themselves, do not describe them, do not establish whether Pledger knows what the formulas are, or even indicate whether Pledger has the technical knowledge to be able to describe them. (Doc. 139-4).

OTK raised various objections to this interrogatory, including overbreadth, undue burden, not limited in time or scope, and that the information sought is not within its custody or control. (Doc. 139-1, PageID.1343). Some of them apply to each of the four subparts of this interrogatory, as construed and enumerated above, while others are specific to certain subparts of it. In OTK's opposition response, it also argues that it has given a responsive answer – pointing primarily to the Villacreces-created Excel spreadsheet. (*See* Doc. 145, PageID.1429-30). OTK further protests Plaintiffs' implication that Pledger knows at least the old formulas. (*Id.*).

To the extent Interrogatory No. 6 seeks the actual formulas (old or new), OTK's objections are **SUSTAINED**. Everyone appears to be on the same page that OTK

does not have them and never has – only ADP does. Moreover, to the extent the formulas themselves is what this item appeared to be after, Plaintiffs' motion makes clear that it is "not asking for ADP's computer algorithms." (Doc. 139, PageID.1317). On its face, this interrogatory asks for OTK to "describe" the formulas, yet no one has made clear how OTK would do that without the formulas themselves. Even Plaintiffs' counsel struggled to clarify how OTK would do so during the June 7 hearing. (*See* Doc. 188). As best the undersigned can ascertain, the bottom line is this: Villacreces was able to reverse engineer the former process to re-create the old formulas. Plaintiffs have that information, and it appears this is the best description of those formulas that OTK can provide. The allegation that Pledger, or anyone at OTK, "must know now how [the "old"] rates [were] calculated because… it directed ADP to change the calculations[,]" is speculative at best. (*See* Doc. 139, PageID.1317). The communications pointed to by Plaintiffs do not support that contention, at least not without more context or hearing from Pledger directly. It is just as likely that OTK said to ADP "fix it," and ADP took it from there. Thus, to the extent Interrogatory No. 6 seeks a description of the pre-September/October 2022 formulas, the undersigned finds that OTK has given a responsive answer by way of pointing to the Villacreces spreadsheet, such that Plaintiffs' motion is **DENIED in part** as to Interrogatory No. 6 (First Set).

With respect to the interrogatory's request for a description of the "new" post-September/October 2022 formulas, however, OTK's objections are **OVERRULED** and Plaintiffs' motion is **GRANTED in part** as to Interrogatory No. 6 (First Set).

The undersigned notes OTK did not provide an answer to this part of the interrogatory, because it observed – as do Plaintiffs – that Villacreces's spreadsheet for the old formulas is not helpful for the new formulas. However, if Villacreces was able to reverse engineer and re-create the old formulas, the undersigned sees no reason why he (or someone else at OTK), would not be able to do the same for the new formulas. Indeed, OTK affirmed during the June 7 hearing that this was at least possible. (*See* Doc. 189). At this stage, the undersigned sees no other way to move the ball forward. To avoid any confusion by way of an inartful directive, the undersigned leaves it at this: OTK is **ORDERED** to undertake the same process previously done that resulted in the Villacreces spreadsheet (for the "old" formulas) with respect to the "new" formulas, which shall then be provided to Plaintiffs in lieu of any other "description" sought by this interrogatory. OTK shall do so by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

The remaining two subparts of this interrogatory deal with Plaintiffs' requests for a description of both the old and new formulas incorporating "step-up" rates. (Doc. 139-1, PageID.1343; *see* Docs. 139, 148). The Villacreces spreadsheet did not and could not incorporate those rates, and it is reasonable to presume the result of the prior directive will run into the same issue. Moreover, neither party has offered a viable path or described a way by which it is theoretically possible for OTK to produce or describe the formulas while also incorporating these rates. (*See* Doc. 189). Accordingly, OTK's objections to the "step-up" portions of this interrogatory are **SUSTAINED** and Plaintiffs' motion is **DENIED in part** as to Interrogatory No. 6

(First Set). However, OTK is **ORDERED** to formally amend and/or supplement its response to affirm it is incapable of responding to these subparts of Interrogatory No. 6 (First Set) as requested by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

### D. Interrogatory No. 7 (First Set)

INTERROGATORY NO. 7: If there are any particular dates or times that OTK contends any Plaintiff was performing activities that were not integral and indispensable to Plaintiff's work activities or which did not constitute compensable working time <u>during time periods that a Plaintiff was clocked in but was not paid</u> then state what it is Defendant contends the Plaintiff was doing and identify who claims to have personal knowledge of such activities.

For each Plaintiff, this interrogatory is limited to the time period:
<u>Beginning</u> 3 years before the earliest of (a) the filing of a Complaint identifying the Plaintiff, or (b) the filing of a Consent to Become a Party Plaintiff, and
<u>Ending</u> the most recent date of employment with OTK as an hourly employee.

RESPONSE: In addition to its General Objections, Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not properly limited in time and scope. Defendant further objects to the extent this Interrogatory seeks information about individuals other than the named Plaintiffs in this action prior to a discovery plan being adopted regarding class discovery. Without waiving its objections, if the named Plaintiffs claim they were performing work before their scheduled state time, after their scheduled end time, or during their paid meal break, such work was not integral and indispensable to their work activities and was not compensable time.

(Doc. 139-1, PageID.1344) (emphasis in original).

Rephrased, this interrogatory asks OTK to identify, for each of the 115+ plaintiffs in this action (or at least for those of the 115+ who are shift-based workers who might possibly "make relief" directly before or after his or her shift begins),[9] any

---

[9] It was suggested during the June 7 hearing this applies to approximately 64 plaintiffs but that the

instances over a period of years where those Plaintiffs were clocked-in but not paid because they were doing something that OTK did not deem an "integral and indispensable" work activity. (Doc. 139, PageID.1318-19). For each such instance, this interrogatory also wants OTK to state what it believes those Plaintiffs were doing, and to identify any persons who might have personal knowledge of what those plaintiffs were doing.

OTK objected on several grounds, including undue burden. (Doc. 139-1, PageID.1344). For the reasons stated below, OTK's undue burden objection is **SUSTAINED**. This interrogatory is unduly burdensome because the instances which Plaintiffs seek for OTK to identify could potentially number in the thousands, and OTK does not otherwise keep a list of them or have the requested information on hand. Further, as described in briefing and during the June 7 hearing, the persons with "personal knowledge of such activities" are Plaintiffs themselves, and what they were doing in each such instance is Plaintiff-specific. (*See* Doc. 189). Thus, the undersigned agrees with OTK that this interrogatory calls for "a narrative account of each potential witnesses' anticipated testimony," because at this point, OTK has no way of knowing what each Plaintiff will say he or she was doing during those times, so any answer given would be pure conjecture. (Doc. 145, PageID.1430-32). Moreover, the undersigned reasons the information sought by this interrogatory would be better obtained through other means such as Plaintiff depositions.

Plaintiffs argue that, for any instances where OTK believes they performed

---

specific amount is not yet known with certainty. (*See* Doc. 189).

activities which were not "integral and indispensable," they are "entitled to know what OTK contends" Plaintiffs were doing instead before any deposition occurs. (Doc. 148, PageID.2265-66). Pointing to rulings in *Gibson*, they argue "it is OTK's burden to show when Plaintiffs started and stopped compensable activities within the clock in and clock out times" and that it will need to offer evidence of the same to survive a potential summary judgment motion. (*See* Docs. 139, 148, 189). OTK has taken the position that any such activities were not "integral and indispensable to their work activities." (Doc. 139-1; *see* Doc. 152). That is the relevant contention that Plaintiffs seek. OTK has not, cannot, nor is it required to at this stage, offer an alternative explanation for what each specific Plaintiff was doing to justify its position that such activities were not integral and indispensable. For these reasons, Plaintiffs' motion is **DENIED** with respect to Interrogatory No. 7 (First Set).

### E. RFP No. 7 (First Set)

> RFP NO. 7: For any person who signed a declaration that has been filed in this civil action by OTK, produce all documents (prepared November 1, 2021 - April 30, 2022) reflecting or referring to possible, or actual, promotions, demotions, transfers to another position, employment-related discipline, and / or pay raises.

> RESPONSE: In addition to its General Objections, Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, irrelevant to the parties' claims and defenses, and unduly vague and ambiguous with respect to the phrase "possible" promotions, demotions, transfers to another positions, employment-related discipline, and/or pay raises.

(Doc. 139, PageID.1350-51).

As an initial point, the undersigned agrees with OTK's objections in part (as boilerplate as they may be) insofar as this request appears to seek at least some

irrelevant information on its face. Briefing and discussion during the June 7 hearing clarified this request is confined to the "small set" of 20 employees who authored declarations filed by OTK on February 8, 2022 (Doc. 38; *see* Docs. 38-1 to 38-20), but the request itself does not say that, instead asking for responsive documents as to "<u>any</u> person who signed a declaration that has been filed in this civil action by OTK." (Doc. 139-1, PageID.1350) (emphasis supplied). By its plain terms then, this would include the February 8 declarants (*see* Doc. 38) as well as Pledger (Doc. 64-4) and Scheid (Doc. 64-5). Given that clarification, however, the undersigned proceeds with only the February 8 declarants in mind.

Plaintiffs describe the declarants as persons who "inserted themselves into this case as persons with supposed knowledge of matters at issue." (Doc. 139, PageID.1321). Candidly, Plaintiffs want to know why, and this request is aimed at discovering an answer to that question.

OTK paints this interrogatory as the classic fishing expedition, and objects on a myriad of grounds. (Doc. 145, PageID.1437). OTK's objections on ambiguity and vagueness grounds – rooted in Plaintiffs' use of "possible" as a qualifier to the scope of the request – and its overbreadth and undue burden objections, which are not substantively supported, are **OVERRULED**. (Doc. 139-1, PageID.1351). The use of "possible" does not make this request vague nor ambiguous and, in light of Plaintiffs' clarification that this request applies only the "small set" of 20 declarants, it is not overly broad, nor would production of relevant documents impose an undue burden

on OTK.[10] With respect to relevance and proportionality, OTK argues the declarants are "not involved in this litigation" and whether they were promoted, demoted, transferred, disciplined, or given a raise during the subject timeframe is not relevant to the claims at issue in this case. (*Id*.). While fair enough that this action does not include claims for retaliation, OTK is incorrect when it states these employees are "uninvolved." (*Id*.). To the contrary, OTK involved them when it used their declarations in support of its opposition to class certification. (*See* Doc. 38). At a minimum, some of these employees could be potential fact witnesses whose credibility and motivations can fairly be questioned and put at issue. For these reasons, OTK's relevance and proportionality objections are **OVERRULED in part** and **SUSTAINED in part**. The undersigned finds the requested production is not unreasonable nor irrelevant, but reasons that, based on the purpose for which they are sought, the scope of any responsive documents should be limited to those prepared by OTK 30 days before or after February 8, 2022 – the day on which the declarations were filed with the Court. (*See* Doc. 38).

Accordingly, Plaintiffs' motion is **GRANTED in part** and **DENIED in part** as to RFP No. 7 (First Set). OTK is **ORDERED** to produce any documents in its possession that were prepared between January 9, 2022 and March 10, 2022 which reflect or refer to any possible (or actual) promotions, demotions, transfers, discipline, and/or pay raises with respect to the 20 employees whose declarations were filed

---

[10] Notably, Plaintiffs conceded during the June 7 hearing that they are not seeking full personnel files on these employees by way of this request, and the undersigned will not require OTK to produce full personnel files in order to be in compliance with this directive. (*See* Doc. 189).

February 8, 2022 (*see* Doc. 38), and shall do so by no later than **July 12, 2024**. *See*

S.D. Ala. CivLR 5(b).

### F. **Interrogatory No. 2 & RFP No. 11 (First Set)**

These items are related.

INTERROGATORY NO. 2: If OTK disputes either:

(a) That the applicable statute of limitations period for any Plaintiff's claims under the FLSA is at least three years, or

(b) That any Plaintiff is not entitled to recover liquidated damages in an amount equal to the amount that Plaintiff recovers for either unpaid minimum wagers, or unpaid overtime compensation under the FLSA

Then:

(a) Describe in detail (who, when, where, what was said) any and all oral communications, (or written communications which OTK cannot or will not produce) which OTK claims support any contention that it acted in good faith, or that it acted with reasonable grounds to believe it was not violating the FLSA, or that its acts or omissions not "willful" as that word is used in the Portal-to-Portal Act, and

(b) Describe in detail (who, when, where, what was said) any and all oral communications, (or written communication which OTK cannot or will not produce) that any salaried employee of Defendant ever had with anyone about whether any of its practices did, did not, might, or might not, comply with the FLSA. This includes but is not limited to practices such as:

   (i)  time rounding for pay purposes,

   (ii) workweek designation for pay purposes,

   (iii)   considering the amount of time for which overtime pay was due in a workweek on anything other than a fixed, regularly receiving period of 168 hours,

   (iv)   inclusion / exclusion of monthly bonuses from rates of pay for overtime pay calculations,

(v) payments made to account for prior underpayments of overtime pay as Melissa Pledger described in deposition testimony on March 11, 2020,

(vi) overtime payments incorporation "RROP" calculations

(vii) calculating rates of pay for overtime for single workweeks based in any way on any time worked, or pay received, in a different workweeks,

(viii) calculating rates of pay for overtime based on the shift times ([i.e.] night shift versus day shift) that the employee worked after 40 hours had been worked in a single workweek.

**This interrogatory encompasses all responsive communications from March 12, 2020 until the filing of the Complaint in this civil action, and all communications with anyone other than OTK's counsel since the filing of this civil action.**

**With regard to this Interrogatory and its subparts, Defendant does not have to repeat as an interrogatory response the exact content of documents actually produced.**

RESPONSE: In addition to its General Objections, Defendant further objects that the requests appear to seek information protected by the attorney-client privilege and attorney work product doctrine and appears to seek information that is not relevant and is not proportional to the needs of the case. Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Defendant further objects to the extent this Interrogatory seeks information about individuals other than the named Plaintiffs in this action prior to a discovery plan being adopted regarding class discovery. Defendant also objects to this Interrogatory because, due to subparts, this Interrogatory contains numerous requests. Without waiving these objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedures, OTK refers Plaintiffs to pages 157 through 206 of the Deposition of David Scheid from the *Hornady* case and will produce documents containing any other responsive, non-privileged communications to the extent they exist.

(Doc. 139-1, PageID.1339-41)

RFP NO. 11: If OTK dispute either:

(a) That the applicable statute of limitations period for any Plaintiff's claims under the FLSA is less than three years, or

(b) That any Plaintiff is not entitled to recover liquidated damages if Plaintiff recovers for either unpaid minimum wages, or unpaid overtime compensation under the FLSA

<u>Then</u>:

(a) Produce all records of communications which OTK claims support any contention that it acted in good faith, or that it acted with reasonable grounds to believe it was not violating the FLSA, or that its acts or omission not "willful" as that word is used in the Portal-to-Portal Act, and

(b) Produce all records of communications that any salaried employee of OTK ever had with anyone about whether any of its practices did, did not, might, or might not, comply with the FLSA. This includes but is not limited to practices such as:

    (i)  time rounding for pay purposes,

    (ii) workweek designation for pay purposes,

    (iii)  considering the amount of time for which overtime pay was due in a workweek on anything other than a fixed, regularly receiving period of 168 hours,

    (iv)  inclusion / exclusion of monthly bonuses from rates of pay for overtime pay calculations,

    (v) payments made to account for prior underpayments of overtime pay as Melissa Pledger described in deposition testimony on March 11, 2020,

    (vi)  overtime payments incorporation "RROP" calculations

    (vii)  calculating rates of pay for overtime for single workweeks based in any way on any time worked, or pay received, in a different workweeks,

    (viii)  calculating rates of pay for overtime based on the shift times ([i.e.] night shift versus day shift) that the employee worked after 40 hours had been worked in a single workweek.

> **This request encompasses all responsive communications from March 12, 2020 until the filing of the Complaint in this civil action, and all communications with anyone other than OTK's counsel since the filing of this civil action.**
>
> RESPONSE: In addition to its General Objections, Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Defendant further objects to the extent this Request seeks information or documents protected by the attorney-client privilege and/or work product doctrine, and to the extent it seeks information or documents about individuals other than the named Plaintiffs in this action prior to a discovery plan being adopted regarding class discovery. Subject to and without waiving its objections, Defendant will produce non-privileged responsive documents to the extent they exist.

(Doc. 139-1, PageID.1352-54).

To state the obvious, these two items seek quite a bit of information from OTK. Plaintiffs' motion begins discussion here by explaining they are relevant to statute of limitations and liquidated damages issues which are "near mirror-image" to matters arising in both *Gibson* and *Hornady*. (Doc. 139, PageID.1312). In *Gibson*, a similar discovery dispute was resolved when OTK stipulated "that a three year SOL would be used for the FLSA claim and that liquidated damages would be awarded equal any compensatory damages award." (Doc. 139, PageID.1313). In *Hornady*, OTK produced responsive documents and provided Rule 30(b)(6) testimony "describing attorney-client communications." (*Id.*).

While these discovery items phrase OTK's position as hypothetical (i.e., the "if" statement), its answer to the operative complaint and defenses asserted therein indicate both the statute of limitations and entitlement to liquidated damages are contested issues at this stage. (*See* Doc. 152). OTK's fifth defense states:

> In the alternative to the Second, Third, and Fourth Defenses, Defendant avers that any violation of overtime requirements occurred in good faith and with reasonable grounds to believe it was not violating the FLSA and was not "willful" under the Portal-to-Portal Act.

(Doc. 152, PageID.2355). And it's seventh provides that "[s]ome or all of the Plaintiffs' claims are barred by the applicable statute of limitations…" (Doc. 152, PageID.2356). Based on the contested nature, Plaintiffs correspondingly seek communications and documents relevant to those defenses by way of these discovery items.

OTK's raised various objections to these items which ran the gambit. (*See* Doc. 139-1, PageID.1340-41; 1353-54). For Interrogatory No. 2, it then pointed to Scheid's deposition from *Hornady* and stated it would "produced documents containing any other responsive, non-privileged communications to the extent they exist," and for RFP No. 11, it asserted it would "produce non-privileged documents to the extent they exist." (*Id.*). Briefing and discussion during the June 7 hearing made clear that OTK has now produced all responsive documents that are non-privileged but maintains its privilege objections. (Doc. 145, PageID.1426; *see* Doc. 189). Thus, to the extent these items seek non-privileged communications and documents, this dispute is effectively moot in light of OTK's effective withdrawal of its objections and affirmation that it subsequently produced all responsive communications and documents. Insofar as non-privileged communications and documents are concerned, Plaintiffs' motion is therefore **GRANTED in part** and **DENIED in part** as to Interrogatory No. 2 and RFP No. 11 (First Set). OTK is **ORDERED** to formally amend and/or supplement its responses by no later than **July 12, 2024** to either state it is has produced all potentially non-privileged communications and documents responsive to these items

28

and/or by formally adopting Scheid's deposition testimony as part of its responsive answer. *See* S.D. Ala. CivLR 5(b).

With respect to communications and documents potentially subject to privilege, the undersigned notes Plaintiffs' have made a persuasive showing that whatever privilege may have existed over communications and documents responsive to these items has been waived and/or no longer applies. (*See* Doc. 139, PageID.1313-15; Doc. 148, PageID.2261-63; Docs. 188, 189). In briefing, OTK does not attempt to respond to those waiver argument(s). (*See* Doc. 148). While it raised some argument in opposition to Plaintiffs' position during the June 7 hearing, it was minimal, unsupported by authority and generally unpersuasive. (*See* Doc. 188). However, the undersigned is not prepared to crack this seal and order disclosure of documents and communications potentially subject to privilege just yet, at least not without the benefit of additional briefing on the matter. Accordingly, to the extent Plaintiffs' motion seeks disclosure of communications and documents which are potentially subject to privilege assertions, the motion is **DENIED in part** as to Interrogatory No. 2 and RFP No. 11 (First Set), **without prejudice** to Plaintiffs' ability to re-raise such matters in a future motion.

### G. Interrogatory No. 1 (Second Set)

INTERROGATORY NO. 1: State the amount of overtime paid within each two-week period:

To each Plaintiff,

For each separate 168 hour period that began Sunday at 6:00 a.m. and ended Sunday at 5:59 a.m.

The time period of this interrogatory is since November 3, 2018. Except

> that for those Plaintiffs who were also Plaintiffs in the [Hornady] case
> this interrogatory is limited to the period beginning November 21, 2021.

(Doc. 139-2, PageID.1367).

The undersigned will not reiterate OTK's objections and supplemental response here but notes it responded in a manner like how it responded to Interrogatory No. 2 (First Set), *see* Part V(A), *supra*.: by raising various objections and argument as to why a fully responsive answer is burdensome or otherwise not feasible, before providing a responsive answer for a representative group (of 11 Plaintiffs) along with an explanation of how, based on records already produced, Plaintiffs could ascertain the information sought. (*See* Doc. 139-3, PageID.1367-71; Doc. 145, PageID.1440-41).

Plaintiffs acknowledge OTK has produced the records relevant to this request but argue more is needed for a complete response. (*See* Doc. 139, PageID.1322-29; Doc. 148, PageID.2270-73; Doc. 189). In the January 22 JSR, the parties explain the "remaining issue is whether Defendant has to prepare similar analyses for the other Plaintiffs" – i.e., for the roughly 105 not included in the analysis it provided for the sub-group of 11 Plaintiffs. (Doc. 180, PageID.3356; *see* Doc. 189). This outstanding point of contention was similarly noted in the May 29 JSR and reiterated during the June 7 hearing. (Docs. 187, 189).

OTK acknowledges that it can give a fully responsive answer for all Plaintiffs but argues doing so would impose an undue burden. (Docs. 145, 189). Based on the parties' briefing, argument during the June 7 hearing, and in light of the importance of this information sought by this interrogatory to the ultimate damages

calculation(s), the undersigned **GRANTS** Plaintiffs' motion with respect to Interrogatory No. 1 (Second Set).[11] Like Interrogatory No. 2 (First Set), a fully responsive answer to this interrogatory is anything but a simple lift, but OTK's relative burden in doing so is substantially lesser than the burden which would be imposed on upon Plaintiffs, particularly in light of the importance of this information to the damages issue and OTK's familiarity with its own document production. Accordingly, OTK is **ORDERED** to undertake this effort and amend and/or supplement its response by providing the information sought by Interrogatory No. 1 (Second Set) by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

### H. Interrogatory No. 2 (Second Set)

INTERROGATORY NO. 2: For each Plaintiff who was not also Plaintiff in [*Hornady*], identify the exact monetary amounts, and related times and dates (if any) that Defendant contends it is entitled to offset a credit against amounts due each Plaintiff for overtime pay relating to meal breaks.

RESPONSE: OTK objects to this request as vague and ambiguous, unduly burdensome, and as seeking information that is not relevant and is not proportional to the needs of this case…

OTK further objects to this interrogatory to the extent that, under Rule 33(d), the answer to this Interrogatory can be obtained from the business records that OTK has already produced, including the "DOWNTIME 70" Excel produced at Bates-stamped page 466.

Without waiving the above objections, OTK states that it has supplemented the "DOWNTIME 70" Excel produced at Bates-stamped page 466 with another Excel produced at Bates-stamped page 29189. Therefore, Plaintiff now has records of all "DOWNTIME 70" stoppages of lines in the Cold Rolling Works from January 1, 205 through June 27, 2023.

---

[11] OTK appeared to begrudgingly concede during the June 7 hearing that it would be willing to undertake this effort to ensure that it is fully meeting its discovery obligations and to counter Plaintiffs' narrative that it was failing to do so. (*See* Doc. 189).

(Doc. 139-3, PageID.1371-72).

This item implicates considerations similar to an item previously discussed – specifically, Interrogatory No. 7 (First Set), *see* Part V(D), *supra*. For the reasons stated below, OTK's undue burden objection is similarly **SUSTAINED** and Plaintiffs' motion is **DENIED** as to Interrogatory No. 2 (Second Set).

The undersigned finds this interrogatory to be unduly burdensome because these instances could potentially number in the hundreds, OTK does not otherwise keep a list of them (by Plaintiff or by employee) and does not have the requested information (beyond what has already been produced) on hand. The undersigned is further persuaded – and Plaintiffs' motion actually supports – OTK's position that this interrogatory calls for a premature narrative account of each witnesses anticipated testimony. Plaintiffs point out this interrogatory relates to OTK's offset defense, which states: "Any damages for any alleged unpaid overtime wages that the Plaintiffs are claim are offset by any pay the Plaintiffs were paid and/or overpaid for a particular workweek or by any pay that Defendant was not required to pay to the Plaintiffs for a particular workweek." (Doc. 152, PageID.2358; *see* Doc. 139, PageID.1329). Plaintiffs describe OTK's position as essentially being: (1) that it pays its employees for 12 hour shifts whether or not they take a lunch break, so (2) when employees do take a lunch break, that time might be subject to offsetting. (Doc. 139, PageID.1329; *see* Doc. 166, PageID.3199). (*See* also, Doc. 139-3, PageID.1371) (describing OTK's offset contention)).

OTK's objection points to *Gibson*'s namesake, who testified he did not always

receive a 30-minute uninterrupted lunch break (even though he should have) because sometimes work-related tasks would come up. (Doc. 139-3, PageID.1371). It uses this example to make the point that each Plaintiff's testimony regarding lunch breaks, and whether they were able to take them uninterrupted, will vary from role to role or even from plaintiff to plaintiff within the same role. (*Id*.). While OTK curiously seems to group certain line-based employees together and implies they will always have the same 30-minute lunch break, Plaintiffs' motion shows how this categorization need be more individualized, since "testimony in other cases is that employees could be re-assigned from line to line." (Doc. 139, PageID.1329). In any event, the undersigned construes OTK's relevant contention as being that if a lunch break was taken, it is entitled to offset that. Whether a lunch break was taken, or able to be offset, will turn on whether the relevant Plaintiff was actually taking the break, or perhaps occasionally working through that break like Gibson did from time to time. Determining whether breaks were taken (or not), and thus whether they were properly offset (or not), will turn on when each Plaintiff said they were doing during the breaks that were offset. Accordingly, the undersigned finds this information would be better suited for Plaintiff depositions.

## I.  **RFP No. 1 (Second Set)**

For RFP No. 1 (Second Set), OTK raised several objections before giving a responsive answer (with Bates-stamped page references) pertaining to Plaintiffs Callier, Odom, and Favors, and then pointed Plaintiffs to where "[s]imilar data for the approximately 116 opt-ins" could be located. (Doc. 139-2, PageID.1360-61). Most of OTK's objections to this request were boilerplate, lacked merit, and have effectively

been withdrawn at this stage. In response to Plaintiffs' motion, OTK states only as follows with respect to this item:

> In response to Request No. 1, OTK states, and will supplement its response to state, that all responsive documents presently known by OTK have been produced. OTK expects additional information to become available after depositions of Plaintiffs are held.

(Doc. 145, PageID.1443).

The record does not indicate OTK has yet supplemented its response as agreed to reflect that "all responsive documents presently known by OTK have been produced." (*Id.*). To the extent OTK's maintains an objection based on the possibility that information may "become available after depositions of Plaintiffs are held," that objection is **OVERRULED** (to the extent it even viable), as the undersigned agrees with Plaintiffs' position that nothing said by any of them during depositions will affect what *documents* OTK currently has in its possession that are responsive to this request. (*See* Doc. 148, PageID.2274).

Because OTK has effectively withdrawn its relevant objections and affirmed that it has nothing further responsive to produce, Plaintiffs' motion is **DENIED** as to RFP No. 1 (Second Set). However, OTK is **ORDERED** to formally amend and/or supplement its response to reflect that it has produced all documents in its possession response to this request by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

## J. **RFPs No. 2, No. 3 & No. 4 (Second Set)**

These items are related.

RFP NO. 2: For each Plaintiff produce the records required to be maintained by 29 CFR Section 516.2(a)(6) since November 3, 2018 (except that for those Plaintiffs who were also Plaintiffs in the [Hornady] case this request is limited to the period beginning November 21, 2021)

RFP NO. 3: For each Plaintiff produce the "total hours worked each workweek" records required to be maintained by 29 CFR Section 516.2(a)(7), or 516.2 (c) since November 3, 2018 (except that for those Plaintiffs who were also Plaintiffs in the [Hornady] case this request is limited to the period beginning November 21, 2021)

RFP NO. 4: For each Plaintiff produce the records required to be maintained by 29 CFR Section 516.2(10) since November 3, 2018 (except that for those Plaintiffs who were also Plaintiffs in the [Hornady] case this request is limited to the period beginning November 21, 2021).

(Doc. 139-2, PageID.1361-64).

OTK's objected to each as vague and ambiguous, unduly burdensome, irrelevant and disproportionate (as to the opt-in Plaintiffs and the request for information more than three years old), and "to the extent it misstates the requirements of the referenced C.F.R. section[s]." (*Id.*). For No. 2 & No. 3, OTK also asserted attorney-client privilege, work-product protection, and on the basis that it sought "premature disclosure of expert testimony." (*Id.*).

Plaintiffs' motion broadly attacks some of these objections and then addresses what they contend OTK is required to "maintain and preserve" under 29 C.F.R. § 516.2 but has not produced. (Doc. 139, PageID.1330-31). OTK's position is that it has made a fully responsive production with respect to each of these items. (Doc. 145, PageID.1443; *see* Doc. 187, PageID.3408). Not only does it affirmatively state in its opposition response that it "has produced what is in its possession," but contends its "records reflect the information required by the cited federal regulations," and proffers it is not required to create documents "in response to what Plaintiffs' incorrectly believe the cited federal regulations require." (Doc. 145, PageID.1443).

OTK affirmed the same to the Court during the June 7 hearing. (*See* Doc. 189).

In relevant part, 29 C.F.R. § 516.2(a) provides that "[e]very employer shall maintain and preserve payroll or other records containing the following information and data…" and then proceeds to list the covered information. Plaintiffs' motion speaks of OTK's records – and it's FLSA obligations – as existing in a specific format. But the regulations are silent in that respect – to the contrary, 29 C.F.R. § 516.1(a) provides that "[n]o particular order or form of records is prescribed by the regulations in this part." Plaintiffs cite a myriad of cases which stand for the general proposition that records must be "proper and accurate" in order to comply with the FLSA. *E.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

Whether "proper and accurate" (or not), OTK has affirmed that it has produced all records responsive to these requests. (*See* Docs. 145, 187, 189). Accordingly, Plaintiffs' motion is **DENIED** as to RFPs No. 2-4 on the basis that OTK has affirmed its production of all records responsive to these requests. However, OTK is **ORDERED** to formally amend and/or supplement its response to reflect that it has produced all documents in its possession response to this request by no later than **July 12, 2024**. *See* S.D. Ala. CivLR 5(b).

## VI.  *Conclusion*

Upon consideration and for the reasons stated herein, Plaintiffs' motion is **GRANTED in part** and **DENIED in part** as set out above.

To the extent any party feels they may be entitled to an award of reasonable expenses under Fed. R. Civ. P. 37(a)(5) in connection with the disposition of Plaintiffs'

motion to compel (Doc. 139), that party must file and serve a motion for such expenses, supported by adequate briefing and evidence showing both entitlement to such expenses and the reasonableness of the amounts requested by no later than **July 19, 2024**. Failure to file such a motion shall be deemed waiver of that party's the right to request such expenses in connection with the motion.

 **DONE** and **ORDERED** this the 20th day of June 2024.

     */s/ Katherine P. Nelson*
     **KATHERINE P. NELSON**
     **UNITED STATES MAGISTRATE JUDGE**